Good morning. May it please the Court, I'm Jeffrey Ehrlich on behalf of the appellants Neill and Jill Kohlhase. This is an appeal from a summary judgment finding that the judgment debtor, Christy Pittman, was not an insured under Safeco's policy. In our view, the key issue before the Court in this appeal is the meaning of the term, your household, as that term appeals and appears in the policy's definition of who's an insured. The policy defines an individual, the following, residents of your household, a, your relatives. Now the you in that statement is the named insured, Judith Thomas, who owned the house. And the issue becomes whether her daughter, who lived in the house that Ms. Thomas owned, is a part of your household as it applies to Ms. Thomas. In order to answer that question, under California law, this Court would apply the sort of familiar three-part or three-step process that the California courts look to to interpret insurance policies. You begin with the plain meaning of the terms. And you have to interpret those in a way that a lay insured would read them, not the way judges or lawyers or insurance experts would read them. So if we look at the starting point, the plain meaning of the terms, you say that Safeco argues in the district court found that the term, your household, necessarily means the same household where Judith lives in Monrovia, California. And I think that that's a reasonable interpretation, but it's not the only interpretation, at least not on the facts of this case. That's because the term, your, which I think Safeco doesn't really pay any attention to, has more than one connotation. It connotes membership, but it also connotes ownership or control. So for example, Jerry Buss is the owner of the Los Angeles Lakers basketball team. They're his team, but he's not a member of the team. So in the context of this case, you have the owner of the house, Ms. Thomas. She doesn't live in the house. If Mr. Buss owns two homes, one here in Los Angeles and one in Montana, and he rarely goes there and he is having his family, one of his daughters, live in Montana in the house and they have lived there and they operate out of there and Mr. Buss calls up Ms. Thomas and says, may I come by? Would that be Mr. Buss' household in the ordinary parlance of a household? I mean, that's the facts of this case. Yeah. So I'm going to say... I don't know about Mr. Buss. I don't know about the team, but I do know about his houses. I think that on the... He's got lots of houses. The key facts here, I mean, the whole... Virtually all of the cases that deal with this issue of household start with a situation where the person who owns the insured property lives in the insured property. There's no dispute about what the household is or where it's located and the dispute is whether certain individuals, about whether they're closely affiliated enough to be part of that household. But we cited cases, there are quite a few of them from various jurisdictions, that deal with a different situation where there are undeniably two households, but one of them is facilitated by the person who buys the insurance, who owns the property, who allows one of their family members, here a daughter and a granddaughter, to live in that house rent-free. Mrs. Thomas pays the insurance on the house, pays the property taxes on the house, pays to have it painted, pays for the upkeep on the furnace. It is not unreasonable to say that that is... Her household, in the sense that she facilitates it, she makes it available to her daughter and granddaughter to live there. That she exercises control over what they do. Before they got the pit bull that caused this whole problem, they called and said, can we adopt Lucy, the pit bull? So it is not unreasonable and that's why the courts that we've cited on pages 25 and 26 of our opening brief and pages 20 and 21 of the reply brief, there are quite a few cases where this particular context has come up, hasn't come up in California, have said that the non-resident property owner has a right to believe and expect when the policy is framed the way this policy is, in terms of your household or his household, her household, that the people who live in the insured house and who are family members are additional insureds. Did she provide the company with any information about this house? I assume, I don't know, Judge Noonan, I assume she told them about who, the age of the house, the background of the house. I don't know whether there was, what was asked in terms of who lives there or how long she's lived there. Never told them about this other household. Well, I don't, there's no suggestion in the record that there was any lack of forthcomingness or that she claimed... She just didn't do it. Right, because she'd owned the house since 1965, and she'd been allowing her daughter and granddaughter to live there since 1982. So... And if they were just total tenants, you wouldn't be making this argument? Well, that's, if they were just tenants, they wouldn't be her, they wouldn't be insured if they were strangers. The only way they can be insured is they have to be family members. The Eighth Circuit case that we cite, Ewing v. State Farm, lays out essentially like a four-part test that courts have looked at for when, in this situation, the non-resident owner can expect coverage for the individuals who live in the house. And a long-standing familiar bond with the persons in the house, the resident members, depend on the non-resident in some capacity, the non-resident retains control over property, and the non-resident purchases the insurance for the home. Those factors are all met here. So, if Safeco had wanted to limit the additional insurers only to people who lived with Ms. Thomas, they could have done that. They have language in the coverage Part C, the personal property language, which says that the coverage under Part C extends to the property that's owned or used by you or members of your family residing with you. That's in the very policy. Safeco know exactly how to restrict the scope of coverage to people who were residing with Ms. Thomas. Where is that in the policy? That's in Coverage C. That's on page 70 of Volume 2 of the plaintiff's excerpt of records. Now, she didn't buy Coverage C. That's the contents coverage. She didn't buy Coverage E either. She did not. And we think that Coverage E also bears on the understanding. She didn't buy it. That's the answer to your conundrum, isn't it, that if it doesn't cover you, if you're not worried about the personal living expenses while you have to get things done, she opted out. That's an opt-in provision. I understand that the coverage is optional. I don't think that it's the answer to my conundrum at all, Judge Fischer. I think that it's a form policy and that the language in those, if she had purchased it, it wouldn't, the language wouldn't change. I mean, the illustration I'm making is that when Safeco wanted to specify they knew how to do it, they did it in this policy. And that Coverage E also illustrates that even Safeco understood and expected in the normal case, this is not a usual situation in the normal case, the household would be at the insured location because the relocation expenses speak to your household. So we think that under California law, when there's more than one reasonable interpretation of the policy, the court isn't tasked with trying to weigh which is the most reasonable one or to try to find the correct one. But what do we do with California law that the district court relied upon, which is the Jacobs case, which says it's not ambiguous? Well, I think... Plain meaning. It means you have to be in the same, include the family members and others, whether related or not, who live together under one head. Second, that the persons live together, be it in the same house or under one roof or at least within one curtilage. I think that I approach Jacobs two ways. One is I think that in much of the back and forth and the brief in our case about whether household is ambiguous is that the term itself isn't necessarily ambiguous, but the application of that term into a given set of facts can be. And more importantly, the question of your household poses the question of which household are we talking about here when you say your household. And Jacobs doesn't speak to that. And the second part of Jacobs is that Jacobs isn't the only case. And to the extent that Jacobs holds... Now, wait a minute. Jacobs was, I think... Well, anyway, it was interpreting the California Supreme Court, which was his household. Right, but... Your, his... I understand, but not same household. But Jacobs, to the extent that it sort of drew the line and said household is inherently not ambiguous, is first of all it's not consistent with the Island decision, the 1949 California Supreme Court decision. I'm just trying to probe your use of the personal pronoun of your. I mean, I'm not sure how would household... It would always have to be a household of somebody who's relevant, so your household doesn't... If Safeco had said the same household, and some of the cases do say that, I wouldn't have an argument. But they didn't say that. Well, the same household as you. Right. Your household. Well... I mean, it's not the your that does it, it's the absence of same. They're interpreting the concept, they're looking to a definition of household. And they're persuaded in the Jacobs case, which is California law, that the term household has the connotations that they articulated, picked up on. Well, Jacobs thought there was one relevant household that was the particular duplex on site. And they said that the other individuals who caused the problem didn't live in that household. But here we have two households, and the issue is can, with a policy that says your household, in the context of a non-resident who's allowing their family members to live in the household for free, which wasn't happening. It can come within that concept. Right. Even if it's not within the curtilage. Right. So a jerry bus crossing state lines would be way stretched, but in this area going as far as they had to go wasn't really that big a stretch. Right. This is a Los Angeles-specific case. Well, I think California courts and the Supreme Court have been certainly somewhat solicitous, or more solicitous than many courts around the country, in terms of weighing the strengths of the arguments of the policyholder and protecting them and protecting the insurance companies. They tend to weigh toward the policyholder, in terms of interpretation in particular. You want to save your time for rebuttal? I do. Thank you. Let's see if SAFCO is ready to throw in the towel. We're not ready to throw in the towel yet, Your Honor. My name is James McShane, and I represent SAFCO. May it please the Court. Despite all of the arguments that are made in the briefs, and the over 100 cases that have been cited on the household issue, this is really a straightforward application of a commonplace insurance provision. Let me begin by looking at some of the policy language, particularly the word that you focused on, Justice Fischer, the word your. It's judge, by the way. There's no justice in the Ninth Circuit. I haven't had to say that for a long time. I'm glad I could give you that lead-in. Let's look at the word you and your. Whether it's your or not. She actually bought the policy, didn't Ms. Thomas, bought the policy for this house. She's the named insured. She bought the policy. You is not merely her. You does not just mean her. On the first page of the definitions, and you'll see it on the supplemental record at page 64, you and your refer throughout the policy to the named insured, and I'm quoting, the named insured shown in the declarations, and the spouse if a resident of the same household. That means that throughout this policy, you and your refer to the named insured, Judith Thomas, and her husband, Art, who live in Monrovia. And then it says insured means you and, if an individual, the following residents of your household. Of your household. That's correct. Your relatives. Correct. That takes it beyond, insofar as insured, which is what's relevant here, beyond the spouse. And so it's your household, which includes your relatives. If your relatives live there. Well, it doesn't say that. The following residents of your household. It says that insured means you and, if an individual, the following residents of your household. That's correct. It doesn't say anything about living there. It says your relatives. In any event, they do live in the house that she insured. They live in what the policy described as the described location, and that is indeed the house that she bought the coverage for. That's the house, right? Sure. It is. Okay. It is. And so she still has, you know, incidents of ownership. She has absolute incidents of ownership. She is the owner. And her daughter is there in the house. Correct. And she's a relative. That's right. So why isn't, what robs the characteristic of this household of being an insured just because Ms. Thomas doesn't reside there? What the policy requires, and it uses the word household. Every definition that you see of household in law. Well, there's no definition in this policy. Not in the policy. But under Bay Cities, there's no, it doesn't mean there's an ambiguity just because a policy term is not defined. And, in fact, Bay City says defining every policy term would be essentially impossible. The policy would fall of its own weight. Household is defined in numerous cases, including Island, Jacobs, and others. How about talking about this policy? You're saying it's plain language. It's an easy case. And I'm trying to, I think we're all trying to wrestle our way through it. Sure. So picking up on your own analysis, insured means the policy holder. Are you saying she's not, Ms. Thomas wouldn't qualify under this policy because she's not residing in the insured location? Of course not. The policy doesn't require Judith Thomas to live in the insured location. So her household, if we take the curtilage definition, it's anybody who is in the insured location. No. Why not? If Ms. Thomas, if that would be, let's stop. I want to make sure I understand your argument. Okay. Are you saying that Ms. Thomas, if she made a claim here, would be considered to be that this place would be her household? It's her house. It's not her household. Her household is the people she lives with. And every definition you will see of household, every judicial definition, every dictionary definition, defines household as basically a group of people. Judith Thomas is not a member of that household. Fair enough. Okay. So she lives there. She does come down there. No, she does not live there. She lives in Monrovia. Well, no. If she stays there for two weeks, is she not living there? It's her house. There is nothing in the record that says she stays there for two weeks at a time. No, I'm just saying, you're saying, well, you know, it's down in Monrovia. I'm not trying to be facetious. I'm trying to understand if this, if she were in the house and she visited, used it as an occasional weekend location, but she more or less had turned the whole house operation over to her daughter and her granddaughter. And she had the bedroom there, and when she'd come down, a bedroom there. And she would stay there for a couple weeks, maybe during the summer, and be with her granddaughter. Would we be fighting about coverage if she didn't reside there full time? If she had a bedroom there, she kept her things there, those would be different facts, and there are many cases that so say. But that's not the case here. But I understand that there may be facts. That's, in fact, I think the plaintiff's argument. It's household alone doesn't determine things. You have to get to the facts and the context. So she does go down and visit. We do know that. Now and then she goes to visit. And she pays the taxes on it. She pays the taxes, that's right. And pays for the upkeep or takes care of the upkeep. So if this accident had happened and she'd been sued, she would have been covered under this policy. She was sued, and she was defended. She was defended successfully. All right. But the question is whether the policy that applies to the house in question, whether her relative who resides there and is clearly a relative is part of her household. So if we're getting into head or, as the case uses, or the curtilage, then we don't really have to try and bring her within the, I forget which is where, it's the Monrovia houses. No, the Monrovia house is where Judith and Art live. It's the house down in Oceanside or San Clemente that Christy lives. And for Christy to be an insured, she has to, it's not the insured location. The insured has to be a resident of her mother's household.  The insured location, I said. The insured location is the San Clemente. That's correct. Yes. Okay. So, and she doesn't qualify. That is, Ms. Thomas, because she doesn't reside there full time. Who doesn't qualify? Ms. Thomas. Oh, Ms. Thomas qualifies. It's her daughter that's at issue here. No, I understand, counsel. We're talking about a policy that covers San Clemente. Okay. That's correct. San Clemente is not Judith Thomas. So the question is whether or not her daughter is a member of Ms. Thomas' household at the San Clemente property. The problem is that Judith and Art Thomas' household is not located at the San Clemente property. Their household is located in Monrovia. You said household refers to people, not to houses. I think that there are many definitions. You cited some. I'm just talking about what you said. I'm willing to go with the definition that you cited straight out of Jacobs. No, I'm willing to go with the one you described as in the policy, which, as you said, household doesn't refer to location. It refers to people, as I explained. Household is not defined in the policy. Household has many judicial definitions, including such things as the one that's in, oh, for example, all of the definitions in Ireland, people who dwell under the same roof and compose a family, a domestic establishment. Well, she's certainly a family. But that's not where she lives. Her household consists of herself and her husband. You're suggesting that it's a plus example. So she got the policy to cover her house. She did. Okay. And because she's in absentee, she apparently still is covered, even though she doesn't live there. She is under this policy, yes. And when she's constructively there as an insured, then I do not understand why, in the San Clemente property, there's any dispute that her daughter fits within the definition of being part of that household, which is relevant to the covered property. Her daughter's household is Christy and the granddaughter, Katie. That's a separate household. No, the definition insured is Ms. Thomas' household. That's right. Exactly. Ms. Thomas' household is Ms. Thomas at Art Thomas in Monrovia. That is their household. And every time that the policy refers to the 127 Esplanade property in San Clemente, that is either referred to as the resident's premises or the described location. Okay. But insured means you and, if an individual, the following residents of your household. Correct. Okay. And she's an insured for purposes of the San Clemente property. Judith Thomas is an insured. Judith Thomas is an insured. That's the mother, yes. She fits that insured definition for San Clemente. Correct? It's irrelevant to San Clemente. She is the name insured. Well, I'm just looking at the definition in the policy. Insured means you and, if an individual, the following residents of your household. Yes. Okay. She's an insured. The policy is on San Clemente. Her household is in Monrovia. Those are the people she lives with. She does not live with her daughter. I think, Justice, one of the cases that would draw the distinction is one that the appellants repeatedly rely on, and it draws the distinction quite nicely. And that is the — it's an Alaska decision called Wainscott v. Ossentamp. That was a case involving separated parents. And you'll see much of the confusion in the case law deals with the hard cases, the ones involving minor children of separated parents. This was a case when parents moved — a father moved out of the household because of a domestic dispute. He thought there would be reconciliation. The wife didn't. And, tragically, the daughter, who was living still in the family home, was killed. And the question was, was there coverage under an uninsured motorist policy that had a resident of the household? And the court said, under those circumstances, yes. It bracketed its decision quite nicely by referring to a different set of facts in an Oregon case, Sheehan v. Northwest Insurance. And, by the way, Wainscott is 633P2D237. It's cited several times by the appellants in their reply. The referenced case within that opinion is Sheehan v. Northwest Insurance Company, which is 258 Oregon 559. Now, after defining or describing the issue, the court said — it said that, well, first of all, permanence in the household makes a big difference. In that case, the parties wanting the insurance argued that there had to be an element of ownership and of support. And the ownership and support existed there because the father was supporting the daughter who died, who was living in the house. But the court said, we don't think that should cover all of the time there. And the quote is as follows. For example, in Sheehan, this definition was met, but the court denied coverage. There, the insured originally resided with his wife, adult daughter, and two grandchildren in a duplex he owned in Eugene. In 1964, he and his wife moved to Klamath Falls. This is a little bit like your bus example. They bought a house in Klamath Falls, but the daughter remained back in Eugene in the duplex that he owned. And he gave — this wasn't just free rent, full support. So the insured continued to provide financial support to his daughter, maintained contacts, and occasionally visited. The question in that case was whether the daughter had been a resident of the insured's household at the time of the accident. The court rejected the argument that the daughter was in the insured's household in spite of the fact that the insured owned the premises in Eugene and provided support for the daughter there. This holding was, we think, correct in light of the facts of that case. The daughter was a full-grown woman with children of her own, and the father and the daughter lived in different cities for a period of four years. Your Honor, in closing, no case, and we invite you to read all hundred of them cited here, there is no case in any jurisdiction that would find coverage for a fully emancipated adult woman who lives 30 — or has lived for 30 years in a house owned by her mother 60 miles away. Thank you. Okay. Thank you. By the way, we do read cases that are cited here without invitation. Let's start with the Alaska case. We rely on it because the Alaska court very clearly makes and accepts the rule that we rely on, that your household has this two-pronged aspect that it can refer to — that under one interpretation, his household does not suggest co-residency, but rather ownership of the premises in support of those residing there. That's the sense that we think it can be used. Safeco could have avoided all this by using clear terms. The New Jersey Supreme Court, in the Carpenter case that we cite, pointed out that for 40 years insurers have understood that household creates problems and they could have fixed the problem and made it clear, but they don't. And I just think that the colloquy that you had with counsel suggests that we don't have the requisite clarity here to say that as a matter of law there's only one way to read this when the situation is one where, under the insurance company's view, the liability coverage that Ms. Thomas purchased covers herself and her relatives who live with her in Monrovia. They're all additional. All the people in Monrovia who are her relatives, if they live with her, are all additional insurers and benefit from the liability coverage for the house in San Clemente, but the people who actually live in the house in San Clemente don't. That is not a reasonable interpretation. That is not what a reasonable insurer would expect. When you own a house, when you buy $500,000 in liability coverage to protect you and the people who live there from the bodily injury claims that result from the ownership, maintenance, or use of the property. Now, sometimes terms and policies are ambiguous, and sometimes the California courts find ambiguity, even when the terms themselves are clear. The case I handled called Minkler, which started in the Ninth Circuit, went to the Supreme Court, found that all the particular terms, an exclusion and a severability clause, were both clear on their face. The ambiguity was how they interacted in the terms of a particular set of facts. And here I think there is ambiguity, and I think that the cases that we cite show that our position is a reasonable one and that there is coverage. Thank you. Thank you. Appreciate it, counsel. The case is submitted, and we will adjourn for the day. This court for the session stands adjourned. Thank you.
judges: Gritzner, Noonan, Fisher